1

2

3

4

5

6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10    In re

11    10 MAPLE ASSOCIATES, LLC,                              No. 11-13639

12                              Debtor(s).
      _____/

13    10 MAPLE ASSOCIATES, LLC,

14

15                              Plaintiff(s),

16              v.                                    A.P. No. 11-1283

17    WESTAMERICA BANK,

18                              Defendant(s).
      _____/

19

20                         Memorandum After Trial
                           _____

21
      I.  Background
22
              Plaintiff in this adversary proceeding is Chapter 11 debtor in possession 10 Maple Associates,
23
      LLC ("10 Maple").  It alleges that its commercial development project in Sonoma, California, is
24
      encumbered improperly by two deeds of trust in favor Sonoma Valley Bank.  10 Maple asserts that
25
      these deeds of trust were placed on the property by its former managing member without authorization
26

                                                     1

1  and with the knowledge and urging of Sonoma Valley Bank.  The primary purpose of this adversary

2  proceeding is to remove these encumbrances from the property.

3      After the deeds of trust were executed and recorded, Sonoma Valley Bank failed.  The

4  defendant in this adversary proceeding is Westamerica Bank, which acquired the assets of Sonoma

5  Valley Bank from the FDIC.   The main legal issue in the case is the extent to which 10 Maple can

6  raise the same arguments against Westamerica Bank that it could have raised against Sonoma Valley

7  Bank if that bank had not failed.

8      By way of background, 10 Maple was formed as a tenancy in common for tax reasons in 2006

9  and remained as such until late 2009, when it became a limited liability company.   There were 15

10  investors in the project, taking title as tenants in common.  They executed a tenancy in common

11  agreement which, among other things, provided that the consent of all of the investors was required to

12  encumber the assets of the project.  Sonoma Valley Bank was given a copy of the agreement.

13      10 Maple also entered into a management agreement with Tuberg, a partnership between

14  Jeffrey Freiberg and Vic Shellenberg.  Among other things, the agreement provided that Tuberg could

15  not, without the prior written approval of the investors, encumber any assets of the project or execute

16  any deed of trust in the name of or on behalf of the project.  Sonoma Valley Bank also received a copy

17  of this agreement.  In addition, each investor signed a power of attorney giving Freiberg or Shellenberg

18  the power to act in their names "for the special and limited purpose(s) of affecting the T.I.C.

19  Agreement for '10 Maple', Sonoma . . . . "

20      Freiberg had a very close relationship with Sonoma Valley Bank.  When the bank was founded,

21  Freiberg's father had been consulted and invited to invest in the Bank and be a member of its board of

22  directors.  Both Freiberg and his father had been among the initial investors in the Bank.  Freiberg,

23  now 66,  was also a sophisticated real estate consultant, investor and developer.

24

25  II.  Disputed Deeds of Trust

26      On June 18, 2008, Freiberg borrowed $320,00.00  from Sonoma Valley Bank in the name of

Case: 11-01283    Doc# 33    Filed: 07/03/12    Entered: 07/03/12 15:25:59    Page 2 of 7

1   The Jeffrey L. Freiberg and Bonnie K. Freiberg Living Trust.  The loan was for personal purposes

2   completely unrelated to 10 Maple.  Freiberg pledged 10 Maple's property as security, signing a deed of

3   trust to 10 Maple's project.  Freiberg signed the deed of trust 25 times, for each of the investors in 10

4   Maple, using the power of attorney.   There was no evidence given to the Bank that the investors in 10

5   Maple consented to the encumbrance.

6        In November of 2009, 10 Maple became a Limited Liability Company.  A new operating

7   agreement was signed, making Freiberg the sole Managing Member.  As such, he was given exclusive

8   authority to undertake any "mortgage or assignment as security of all or a substantial part of the

9   Company's assets in connection with obtaining financing other than in the ordinary course of business

10  of the Company."  Sonoma Valley Bank was given a copy of this agreement.

11       At the end of 2009, both Freiberg and Sonoma Valley Bank were struggling.  The Bank

12  approached Freiberg with the suggestion that he secured his outstanding personal obligations to the

13  Bank by pledging the property of 10 Maple as security.  This would have the dual effect of improving

14  Freiberg's credit and improving the Bank's portfolio for bank examiners.  On July 8, 2010, Freiberg,

15  on behalf of 10 Maple (now an LLC), signed a deed of trust intending to collateralize several of his

16  personal loans totaling $700,000.00.  The deed of trust is internally inconsistent, in that the first page

17  recites "The lien of this Deed of Trust shall not exceed at any one time $700,000.00" but the last page

18  (Page 9) defines the note which it secures as just one of Freiberg's notes, "in the original principal

19  amount of $100,000.00 from Borrower to Lender, together with all renewals of, extensions of,

20  modifications of, refinancing of, consolidations of, and substitutions for the promissory note or

21  agreement."

22       The officers of Sonoma Valley Bank knew that Freiberg was encumbering 10 Maple property

23  to secure his personal debt.  The former president of the Bank invoked his Fifth Amendment rights and

24  refused to testify, but the former loan officer who represented the Bank testified freely and frankly.

25  When asked what 10 Maple was getting out of the 2010 transaction, she readily replied, "Nothing."

26       Later in 2010, Sonoma Valley Bank failed.  Its assets were taken over by the Federal Deposit

3

1   Insurance Corporation.  On August 20, 2010, it entered into a purchase and assumption agreement with

2   Defendant Westamerica Bank.

3        On May1, 2011, Freiberg sent a letter to the members of 10 Maple confessing that he had

4   encumbered the assets of 10 Maple to secure his personal obligations.  He represented in the letter that

5   he had been tricked by the Bank into "inadvertently" signing the deeds of trust and that "this was

6   completely unintentional."  The court does not know if the members believed these representations,

7   but the court certainly does not.  The court finds unbelievable that a sophisticated real estate

8   consultant, investor and developer routinely signed documents without reading them or that it would

9   be possible for him to have signed a deed of trust without recognizing what it was and what property it

10  encumbered.  Freiberg had to sign the 2008 deed of trust some 25 times, including once for every

11  member's power of attorney.  The testimony of the loan officer as to the 2010 deed of trust was

12  convincing and clearly established that both the Bank and Freiberg knew exactly what they were

13  doing.  The members of 10 Maple thereafter wisely removed Freiberg as managing partner.  10 Maple

14  filed its Chapter 11 petition on September 30, 2011, and this adversary proceeding shortly thereafter.

15       The court has no difficulty finding that Freiberg intentionally exceeded his authority when he

16  executed the deed of trust recorded on July 3, 2008 (Trial Exhibit 26, hereafter the 2008 deed of trust)

17  and the deed of trust recorded July 13, 2010 (Trial Exhibit 32, hereafter the 2010 deed of trust).  The

18  court further finds that Sonoma Valley Bank knew that, as to the 2008 deed of trust, there was no

19  written agreement of all the investors authorizing it and that Freiberg was acting beyond the scope of

20  the powers of attorney.  As to both deeds of trust, Sonoma Valley Bank knew Freiberg was exceeding

21  his authority and that 10 Maple received no benefit and was being harmed by the transactions.

22

23  III.  Effect of FDIC Transfer to Westamerica Bank

24       There is no general federal common law governing the extent to which defenses against a failed

25  bank can be raised against the successor bank.  *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 83, 129

26  L.Ed.2d 67, 73, 114 S.Ct. 2048 (1994).  Any matters not explicitly addressed by the Financial

4

1  Institutions Reform, Recovery, and Enforcement Act of 1989 [FIRREA] are left to state law. *Id.* at 88.

2  Under FIRREA, when the FDIC asserts the claims of a failed bank, any defense good against the

3  original party is good against the FDIC. *Id.* at 86.

4      The court finds particularly instructive the case of *DiVall Insured Income v. Boatmen's First*

5  *National Bank*, 69 F.3d 1398 (8th Cir. 1995). In that case, a limited partnership sued the successor of a

6  failed bank for a declaration that it was not liable on a note secured by partnership assets because the

7  proceeds of the loan were used by its general partners for personal purposes and not partnership

8  business. The district court granted summary judgment for the successor bank, ruling that the

9  successor bank was not subject to defenses which could have been raised against the failed bank. The

10 Court of Appeals reversed, holding that the defense was not barred by FIRREA, any federal common

11 law, or state law.[1]

12      If anything, the case of 10 Maple is stronger than the case of the partnership in *DiVall*. In that

13 case, the stated purpose of the original loan was to provide the partnership with working capital. In

14 this case, the purposes of the transactions were to benefit only Freiberg. Sonoma Valley Bank knew

15 that 10 Maple was getting nothing, and that Freiberg was exceeding his authority by encumbering 10

16 Maple property for personal purposes. Moreover, the deeds of trust at issue here did not even secure

17 obligations of 10 Maple.[2]

18

19

20

---

21      [1]The court in *DiVall* found that the successor bank was not a holder in due course under
   Missouri law because the note was not negotiable. In this case, Westamerica does not have the rights
22 of a holder in due course under California law because a successor cannot acquire rights of a holder in
   due course of an instrument taken by purchase as part of a bulk transaction not in the ordinary course
23 of business of the transferor. Cal. Com. Code § 3302(c).

24      [2]The 2008 deed of trust recites that the borrowers are the tenants in common of 10 Maple, but
25 the note is made only by the Jeffrey L. Freiberg and Bonnie K. Freiberg Living Trust. The 2010 deed
   of trust recites that the borrower is Jeffrey Freiberg, and was supposed to secure only Freiberg's
26 personal notes.

5

1    IV.  Defects in the 2010 Deed of Trust

2          The 2010 deed of trust was rather hastily thrown together in a joint attempt by Freiberg and

3    Sonoma Valley Bank to shore up their respective credit.  It was supposed to secure several notes made

4    by Freiberg totaling $700,000.00.  The first page of the deed of trust recites the maximum lien was

5    $700,000.00.  However, the note which it purports to secure is identified as "the promissory note dated

6    June 28, 2010, in the original principal amount of $100,000.00 . . . ."  There was apparently no such

7    note, though there were two "Change in Terms"agreements of that date, one for $200,00.00 and one

8    for $500,000.00.  10 Maple argues that the deed of trust would not have priority over a bona fide

9    purchaser for value, and therefore it is avoidable by a Chapter 11 debtor in possession pursuant to  §

10   544(a)(3) of the  Bankruptcy Code.

11          The court does not agree with 10 Maple's position.  Textual inaccuracies in a recorded

12   instrument will not necessarily limit its validity, and language contained in a document can trigger a

13   duty of further inquiry.  59 C.J.S. Mortgages § 306 (2012).   A subsequent purchaser is not entitled to

14   ignore reasonable warning signs that appear in a recorded document.  *Triple A Management Co. v.*

15   *Frisone,* 69 Cal.App.4th 520, 531 (1999).  Given the seemingly ambiguous amount secured by the

16   deed of trust, a subsequent purchaser or encumbrancer would be required to either inquire as to the

17   amount secured by it or assume that the higher amount is correct.   A good faith purchaser "is not

18   entitled to interpret ambiguities in his own favor nor is he entitled to ignore reasonable warning signs

19   that appear in the recorded documents."  *612 South LLC v. Laconic Limited Partnership,* 184

20   Cal.App.4th 1270, 1279 (2010).  The court will grant relief to 10 Maple, but not on account of its  §

21   544(a)(3) argument.

22

23   V.  Conclusion

24          Both the 2008 and 2010 deeds of trust were executed by Freiberg to secure his personal

25   obligations and not those of 10 Maple.  They were not authorized by the agreements between Freiberg

26   and his fellow investors.  At all times, officers of Sonoma Valley Bank knew that Freiberg was not

6

1   authorized to encumber 10 Maple property for such purposes and that 10 Maple was receiving nothing

2   in the transactions.  The 2010 transaction at least appears to the court to have been the result of an

3   attempt by Freiberg and the officers of Sonoma Valley Bank to mislead bank examiners.  While the

4   court rejects 10 Maple's argument under  § 544(a)(3) that its rights as a bona fide purchaser defeats the

5   lien claims of Westamerica Bank, it finds that the two deeds of trust were not enforceable by Sonoma

6   Valley Bank due to lack of consideration and known lack of authority of Freiberg to execute them.

7   The court concludes as a matter of law that Westamerica Bank has no more right to assert the validity

8   of the deeds of trust than Sonoma Valley Bank and is subject to the same defenses.  The court will

9   accordingly declare the two deeds of trust to be null and void and that Westamerica Bank has no right,

10  title or interest in the real property of 10 Maple on account of  those deeds of trust.  10 Maple shall

11  also recover its costs of suit.

12          This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and

13  FRBP 7052.  Counsel for 10 Maple shall submit an appropriate form of judgment forthwith.

14

15  Dated:  July 3, 2012

16

17  _____
    Alan Jaroslovsky
18  U.S. Bankruptcy Judge

19

20

21

22

23

24

25

26

7